UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN C. MONTGOMERY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-0463 |
| ) | Judge Echols |
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant CSX Transportation Inc.'s ("CSX") "Motion to Dismiss" (Docket Entry No. 6) to which Plaintiff John C. Montgomery ("Montgomery") has responded in opposition (Docket Entry No. 11). For the following reasons, the Motion to Dismiss will be denied.

This is an employment discrimination action which arose after Plaintiff John C. Montgomery ("Montgomery") was terminated from his probationary employment as a conductor trainee with CSX Transportation, Inc. ("CSX"). Plaintiff claims his termination violated the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. 50-1-304, and his probationary contract with the Defendant railroad.[1] (Docket Entry 1 ¶ 16). Defendant seeks dismissal on the basis of Plaintiff's failure to state a claim and preemption of Plaintiff's breach of contract claim under the Railway Labor Act ("RLA"), 45 U.S.C. § 151a.

---

[1] The Complaint suggests the Defendant was negligent and was in breach of contract by terminating Plaintiff. (Docket Entry No. 1 ¶¶ 11 & 13).

1

## I. Standard of Review

In evaluating the Complaint under Rule 12(b)(6), the Court must accept as true all of Plaintiff's allegations and resolve all doubts in Plaintiff's favor. See Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990). The Court should not dismiss the Complaint unless it appears beyond doubt that Plaintiff cannot prove any set of facts in support of his claims that would entitle him to relief. See id.

## II. Facts

The facts alleged in the Complaint are as follows. In March of 2004, Montgomery, a Caucasian male, became a conductor-trainee for CSX. An employment contract existed which provided if Montgomery successfully completed his probationary period, he would be promoted to the position of railroad conductor. (Docket Entry No. 1, ¶ 5).

During Montgomery's training period, all conductor-trainees were required to pass two computer-based tests: the "Operating Rules Test" and the "ACE test." (Docket Entry No. 1, ¶¶ 6 & 7). Montgomery passed the "Operating Rules Test" with ease. While taking the test, Montgomery noticed other trainees were given the correct answers by supervisors. (Id. ¶ 6).

The first time Montgomery took the "ACE test," which required an 85 to pass, he scored 77. All trainees were given two chances to pass this test. Even though some of the trainees were afforded remedial training to prepare for the re-test, Montgomery was not provided any such training. (Id. ¶ 7).

2

Montgomery claims that while taking the "ACE test" for the second time, he observed some employees were allowed to take the test together so they could assist one another and some were allowed telephone access to contact others for help. Montgomery was not permitted access to others when he took the test. (Id. ¶ 7).

Montgomery scored an 84 the second time he took the "ACE test." In accordance with standard practice, he was allowed to have his score reviewed because his score was close to the passing grade. A supervisor in CSX's home office in Jacksonville, Florida, determined Montgomery had passed. However, this determination was overruled by Montgomery's Nashville supervisor. (Id.).

At the same time Montgomery took the "ACE test" for a second time, two African-American trainees also took the test. They too failed, but threatened to sue CSX for racial discrimination for failing them. Montgomery "avers that the sole and procuring cause of h[im] being failed on the second 'ACE test'" after review of his test score in CSX' home office was CSX' fear of a race discrimination suit brought by the African Americans taking the same test. (Id. ¶ 9).

Montgomery was terminated from his CSX employment on June 10, 2004.[2] (Id. ¶ 10). He subsequently filed suit in this Court.

---

[2]The Complaint is unclear as to what happened to the African Americans who had likewise failed the test. All the Complaint alleges is that after failing the test, the two individuals threatened to sue CSX, even though such a claim was baseless. (Docket Entry No. 1 ¶ 9).

3

## III. ANALYSIS

As indicated, CSX has moved to dismiss Montgomery's Complaint. CSX claims Montgomery has failed to state a claim under the TPPA and that his claim for breach of contract is preempted by the RLA.[3]

**A. Tennessee Public Protection Act**

"[T]he Tennessee Public Protection Act, also known as the Tennessee 'Whistleblower' Act, was enacted to protect employees from being discharged in retaliation for 'blowing the whistle' on infractions of rules, regulations, or the law pertaining to the health, safety, and general welfare of the public." Guy v. Mutual of Omaha, Ins. Co., 79 S.W.2d 528, 535 (Tenn. 2002). In relevant part, the Act provides: "(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304. "Illegal activities" are defined to mean "activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Id.

In order to establish a claim under the TPPA for retaliatory discharge, a plaintiff must show that: (1) he was an employee; (2) he refused to remain silent about violations of law; (3) he was fired; and (4) an exclusive causal relationship exists between his refusal to remain silent and his firing. See Henderson v. Corr.

---

[3]In his response in opposition to Defendant's motion for summary judgment, Montgomery notes that even if CSX was to prevail on its presently pending motion, he would still have a claim for negligence. (Docket Entry No. 11 at 4).

4

Corp. of Am., 918 F.Supp. 204, 209 (E.D. Tenn. 1996); Griggs v. Coca-Cola Employees' Credit Union, 909 F.Supp. 1059, 1063 (E.D. Tenn. 1995).[4]  CSX claims that Montgomery cannot establish the second or fourth elements.

It is far too premature for this Court to determine, as a matter of law, that Montgomery cannot come up with any set of facts consistent with his allegations which would entitle him to relief under the statute.  While CSX characterizes his claims as merely being a claim for unfair treatment by his employer, the Complaint easily can be read as alleging more sinister and potentially illegal implications.

For example, it is possible to read the Complaint more broadly as inferring that by feeding its soon-to-be conductors the answers to tests, CSX ignored potential safety implications.  Regardless, whether CSX's alleged actions amounted to a violation of some law or regulation will have to be determined at a later date since the Complaint as framed is sufficient to put CSX on notice as to Montgomery's claim under the TPPA.  See, Swierkiewicz v. Sorema, 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002)(the "simplified notice pleading standard relies on liberal discovery rules and summary

---

[4]In his brief, Montgomery cites Wooley v. Madison County, 209 F.Supp.2d 836, 845 (W.D. Tenn. 2002) for the proposition that an employee need only show that an employee refused to participate in, or remain silent about, a "serious workplace irregularity," as opposed to illegal activities.  (Docket Entry No. 11 at 2). However, the court in Wooley did not retract from settled Tennessee law that the second element for a TPPA claims requires showing "illegal activity."

5

judgment motions to define disputed facts and issues and to dispose of unmeritorious claims").

**B. Railway Labor Act**

CSX has also moved to dismiss Montgomery's claim for breach of contract contending that such a claim is a "minor dispute" under the Railway Labor Act, 45 U.S.C. § 151a ("RLA") and hence subject to administrative review. (Docket Entry No. 7 at 4 & 6). Montgomery labels this contention as "breathtaking" since he lost his job. (Docket Entry No. 11 at 3).

Section 2 of the RLA preempts state laws governing "minor disputes" between employers and employees. See, Hawaiian Airliners, Inc. v. Norris, 512 U.S. 246, 156, 114 S.Ct. 2239 (1994). The Sixth Circuit has noted a breach of contract claim is an issue of "minor dispute" under the RLA since "minor disputes include claims involving the meaning or application of an existing collective bargaining agreement provision to a specific situation or case." Wolfe v. Norfolk Southern Railway Co., 66 Fed. Appx. 532, 535 (6th Cir. 2003). Thus, "if the resolution of [a] state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted." Capraro v. United Parcel Service, 993 F.3d 328, 331 (3d Cir. 1993).

Some courts have held that termination of an employment is a "minor" dispute under the RLA over which a federal court would not have jurisdiction. See, Id.; Magnuson v. Burlington Northern, Inc., 576 F.2d 1367, 1369 (9th Cir. 1978). Others have held it is not, at least where the reason for, and manner of, a probationary

6

employee's discharge are not within the terms of the agreement between the employer and the union. <u>See</u>, <u>Whitaker v. American Airlines, Inc.</u>, 285 940, 947 (11th Cir. 2002).

In this case, the Court is in no position to determine whether Montgomery's termination may be regarded as a "minor dispute" under the RLA and hence subject to administrative review. The Court does not know if a Collective Bargaining Agreement exists, what its terms may be, and whether it even applies to probationary employees. As such, CSX's motion to dismiss will not be granted.

## IV. <u>Conclusion</u>

Because Montgomery may be able to establish facts consistent with his Complaint which would entitle him to relief under the TPPA or the RLA, the Court will deny Defendant's Motion to Dismiss (Docket Entry No. 6).

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

7